1

2

3

4

5

6

7

8

9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| ISAIAH J. PETILLO, | Case No. 1:21-cv-01401-JLT-SAB (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING PARTIES' MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| REYNALDO JASSO, et al., | (ECF Nos. 35, 36, 38) |
| Defendants. | |

11

12

13

14

15

16    Plaintiff Isaiah J. Petillo is proceeding pro se in this civil rights action filed pursuant to 42

17   U.S.C. § 1983.

18    On November 10, 2022, Plaintiff filed a motion for summary judgment.  (ECF No. 35.)

19   On November 14, 2022, Defendant Ochoa filed a motion for summary judgment.  (ECF No. 36.)

20   On November 17, 2022, Defendant re-served Plaintiff with the motion for summary judgment,

21   along with the proper notice pursuant to Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998).  (ECF

22   No. 38.)

23                                          **I.**

24                         **RELEVANT BACKGROUND**

25    This action is proceeding against Defendants R. Jasso and V. Ochoa for excessive force

26   in violation of the Eighth Amendment.[1]

27   _____

28   [1] Defendant Jasso concedes there are issues of disputed fact which preclude summary judgment in his favor on Plaintiff's excessive force claim.

1    Defendants filed an answer to the complaint on November 29, 2021.  (ECF No. 10.)

2    On January 3, 2022, the Court issued the discovery and scheduling order.  (ECF No. 14.)

3    On November 10, 2022, Plaintiff filed a motion for summary judgment.  (ECF

4    No. 35.)

5    On November 14, 2022, Defendant Ochoa filed a motion for summary judgment.

6    (ECF No. 36.)

7    On November 17, 2022, Defendant re-served Plaintiff with the motion for summary

8    judgment, along with the proper notice pursuant to Rand v. Rowland, 154 F.3d 952 (9th Cir.

9    1998).  (ECF No. 38.)

10    On November 28, 2022, Defendant filed an opposition to Plaintiff's motion for summary

11    judgment.  (ECF No. 39.)

12    On December 1, 2022, Plaintiff filed an opposition to Defendant's motion for summary

13    judgment, and Defendant filed a reply on December 14, 2022.  (ECF Nos. 40, 43.)

14                                    **II.**

15                           **LEGAL STANDARD**

16    **A.    Summary Judgment Standard**

17    Any party may move for summary judgment, and the Court shall grant summary

18    judgment if the movant shows that there is no genuine dispute as to any material fact and the

19    movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks

20    omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's

21    position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to

22    particular parts of materials in the record, including but not limited to depositions, documents,

23    declarations, or discovery; or (2) showing that the materials cited do not establish the presence or

24    absence of a genuine dispute or that the opposing party cannot produce admissible evidence to

25    support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider

26    other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R.

27    Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir.

28    2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

Where, as here, the parties have filed cross-motions for summary judgment, "[e]ach motion must be considered on its own merits." Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." Id.

In arriving at these Findings and Recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**III.**

**DISCUSSION**

**A.      Summary of Plaintiff's Complaint**

On July 18, 2018, while Plaintiff was on his way to pill county on the B-yard patio, he was stopped and confronted by Defendant Ochoa and non-party Vargas regarding overfamiliar behavior occurring days before toward a female nurse. Both Ochoa and Plaintiff became angry. Defendant Jasso approached and cut into the conversation. Plaintiff told Jasso to "mind yo business," and walked away to avoid further conflict. A few second later, both Defendants Jasso and Ochoa followed Plaintiff, and Jasso go up close in Plaintiff's face. Jasso told Plaintiff "he could do what he wants that c/o Ochoa business is his business." "This is my fucking patio."

Jasso then grabbed Plaintiff's shirt and "tried to manhandle" him.  Plaintiff cursed at Jasso and "tried to lightly pull away"  Defendants Jasso and Ochoa then tried to grab Plaintiff's arms to take him to the ground or otherwise restrain him.  Plaintiff contends he "held on to [the] B-yard patio gate for dear life."  After a brief struggle, Plaintiff went down on the blacktop pavement, and officer Ochoa landed on top of Plaintiff's back while officer Jasso was on Plaintiff's upper torso.  While Ochoa "assaulted" Plaintiff he hit the left side of his head on the ground causing an abrasion, large scratch, bruising and scrapes.  Defendant Jasso continued to use excessive force against Plaintiff, including striking him in the face with his fist and knees while he was in handcuffs.  The use of force by Jasso caused further significant injuries, such as head pain, a scar on the left side of his face, vision issues, neck soreness, right wrist pain, a tingling in his ring finger, mental anguish, depression, PTSD, paranoia, anxiety, among other injuries.

**B.  Parties Undisputed Facts[2,3]**

1.  Plaintiff Petillo is a California State Prison inmate.  At all relevant times alleged in the complaint, Plaintiff was housed at Kern Valley State Prison (KVSP).  (ECF No. 1, Compl. at 1.)

2.  On September 20, 2021, Plaintiff filed the operative complaint under 42 U.S.C. § 1983, alleging claims of excessive force against Defendants R. Jasso and V. Ochoa.  (ECF No. 1, Compl. at 4.)

3.  On November 29, 2021, Defendants Jasso and Ochoa filed an answer.  (ECF No. 10.)

4.  On July 18, 2018, Jasso and Ochoa were correctional officers at KVSP.  (ECF No. 1, Compl. at 4.)

5.  On July 18, 2018, at about 0716 hours, Plaintiff was on the B-yard patio on his way to pill call.  (ECF No. 1, Compl. at 4; Declaration of V. Ochoa (Ochoa Decl.) ¶¶ 1-3, Ex. 1, CDCR 837-C Report.)

---

[2] Hereinafter referred to as "UF."

[3] Although certain statements were indisputably made by Plaintiff, the specific context and timing in which the statements were made are subject to dispute based on the conflicting testimony of Plaintiff and Defendant Ochoa.

4

1    6.    Defendant Ochoa "approached" Plaintiff to counsel him.  (Pl. Opp'n, Ex. L-L1 &
2  L3.)

3    7.    Plaintiff asked Defendant Ochoa "was it really necessary for you to assume you
4  should confront [Plaintiff]."  (Pl. Opp'n, Ex. L-3, Lines 17-18.)  Defendant Ochoa responded,
5  "Yes. As a correctional officer, I have an obligation to counsel inmates regarding inappropriate
6  conduct that I learn they have engaged in, including, as here, unofficial reports of concerns from
7  'free staff' (female civilian medical staff) about Plaintiff's inappropriate behavior."  (Id.)

8    8.    Defendant Ochoa admits to initiating primary contact "approaching" Plaintiff.
9  (Pl. Opp'n, Exs. L, L-1, Lines 1-4.)

10    9.    On July 18, 2018, Plaintiff and Ochoa had an encounter on the B-yard that
11  stemmed from Plaintiff's previous sexual behavior towards a female medical nurse."  Ochoa told
12  Plaintiff, "Your sexual behavior and comments [to staff] need to stop."  (ECF No. 1, Compl. at 4;
13  Plaintiff's Deposition Transcript (Pl. Dep.) at 25:13-18; 92:20-23; 93:11-13; Ochoa Decl. ¶ 3,
14  Ex. 1, CDCR 837-C Report.)

15    10.    Plaintiff told Ochoa to "Talk to me like a man, I'm a crip, I will handle my
16  business all the time, at all times."  (Pl. Dep.  at 24:15, 28:13-16, 30:17-25, 31:1-8.)  Plaintiff
17  testified at his deposition, "I will handle my business.  Like, you telling me to stop doing this.
18  I'm going to do what I want.  You know what I mean.  Basically, I'm going to do what I want.
19  Get up out my face.  I got a life sentence.  I'm kind of in my own world.  Like, leave me alone."
20  (Pl. Dep. at 31:3-8.)

21    11.    "Plaintiff ask'd Def Ochoa why he waited '4' full whole days to decide an [sic]
22  confront/counsel [Plaintiff]."  (Pl. Opp'n, Ex. E-1, Lines 4-5.)  Defendant Ochoa responded, "On
23  July 18, 2018, Defendant counseled Plaintiff after learning that, on July 11, 2018, Plaintiff
24  grabbed his groin area at the dentist's office; on July 14, 2018, Plaintiff gave a love note to an
25  LVN; and on July 17, 2018, Plaintiff made sexual comments to an LVN during pill line."  (Pl.
26  Opp'n, Ex. E-1, Lines 15-18.)

27    12.    Defendant Ochoa admitted he informed Plaintiff to head back to his building.  (Pl.
28  Opp'n, Ex. M, Lines 6, 14-15.)

13.     Plaintiff told two other inmates to, "Post up, fools.  Post up.  Be ready"?  (Pl. Dep. at 34:3-4.)

14.     Plaintiff tried to avoid Defendant Ochoa and turned and walked away from both Ochoa and Jasso.  (Pl. Opp'n, Exs. A-A, C, D.)

15.     Plaintiff asked Defendant Ochoa, "was it really necessary for you to assume you should confront [Plaintiff]."  (Pl. Opp'n at 7.)

16.     Plaintiff reported in his CDCR 602 that Jasso "asked me to turn around, but he used foul language."   Ochoa provided in his CDCR 837-C Report that "Officer Jasso ordered Inmate Petillo to turn around" and cuff up.  (Declaration of B. Hancock (Hancock Decl.), Ex. 1, CDCR 602 Form; Ochoa Decl. ¶ 3, Ex. 1, CDCR 837-C Report.)

17.     Plaintiff reported in his CDCR 602 that he held on to a gate after Jasso and he cursed at each other.  Plaintiff testified that he put his back against the put his back against the gate and faced Jasso and Ochoa and then turned to his side.  Plaintiff also reported in his 602 report that Ochoa and Jasso "struggled" to take him down.  (ECF No. 1, Compl. at 8; Hancock Decl., Ex. 1, CDCR 602 Form; Pl. Dep. at 37:23-24, 38:1-13, 39:12-14.)

18.     Plaintiff testified "There was no way they were going to get my fingers out the gate." (Pl. Dep. at 43:5-19.)

19.     Ochoa and Jasso were trying to pull him away from the gate.  (Pl. Dep. at 43:5-9.)

20.     Jasso grabbed Plaintiff's right arm and Ochoa grabbed his left arm.  (ECF No. 1, Compl. at 4-5, 8; Ochoa Decl. ¶ 3, Ex. 1, CDCR 837-C Report.)

21.     Plaintiff admits that Jasso and Ochoa did not hit him while he was holding onto the gate.  (Pl. Dep. at 44:1-3.)

22.     Plaintiff admits to placing his arms or hands under his body and flexing his arms while Ochoa Jasso tried to cuff in  (Pl. Dep. at 50:6-8, 25; 51:1-9, 13; Ochoa Decl. ¶ 3, Ex. 1.)

23.     Jasso assisted Plaintiff up onto his feet and escorted him to the B-Program Office. (Pl. Dep. at 54:12-19; 56:8-10; Ochoa Decl. ¶ 3, Ex. 1, CDCR 837-C Report.)

24.     Defendant Ochoa acknowledges he used physical force on Plaintiff.  (Pl. Opp'n,

Ex. O, Lines 26-28; Ex. O-1, Line 5.)

25.   After the incident, Ochoa issued Plaintiff a Rules Violation Report (RVR) on CDCR Form 115, charging him with assault on a peace officer not likely to cause great bodily injury.  (Ochoa Decl. ¶ 5, Ex. 2, CDCR Form 115, RVR, Log No. 5312744.)

26.   Plaintiff admits to having a pre-existing injury to his right eye sustained at Corcoran State Prison on 11/9/2017 involving Case No. 1:18-CV-00217-JLT-GSA.  (ECF No. 1, Compl. at 10; Pl. Dep. at 61:9-25; Declaration of Bonner (Bonner Decl.), Ex. 9 (ophthalmologist report), Ex. 1 (November 2017 progress note).

27.   On July 27, 2018, Plaintiff was examined by an ophthalmologist complaining of blurred vision.  Plaintiff told the ophthalmologist he got punched in the right eye in November 2017, and his eye was red for 2 months.  The blurred vision had been present for 6 months.  Plaintiff was diagnosed with commotio retinae to the right eye, which: (1) would resolve over time; and (2) might have been caused by a traumatic injury.  (ECF No. 1, Compl. at 10; Bonner Decl. Exs. 9 (right eye injury in 2017 and blurry vision present for the last 6 months); Ex. 1 (progress note of prior red eye injury in 2017 and blurry vision); Ex. 8 (diagnosis); Ex. 10 (commotio retinae resolved and eye exam with testing looks good).

28.    On August 24, 2018, during a follow-up exam, the ophthalmologist concluded that Plaintiff's commotio retinae was resolved.  (Bonner Decl., Ex. 9.)

29.   On September 10, 2018, a physician noted a July 2018 x-ray revealed an old fracture, and an August 1, 2018 x-ray revealed scapho-lunate advanced collapse (SLAC) in his wrist with posttraumatic osteoarthritis.  (Bonner Decl., Ex. 11.)

30.   On September 17, 2018, progress notes show that Plaintiff requested a physician to reduce the dosage of his prescription of Hydrochlorothiazide due to symptom of dizziness.  A July 18, 2018, CT scan of the head revealed no fracture and was normal.  (Bonner Decl. Ex. 12, Ex. 5.)

**C.   Parties' Motions for Summary Judgment**

Plaintiff alleges that Defendants Ochoa and Jasso used excessive force in July 18, 2018, resulting in physical injuries.  Only Defendant Ochoa moves for summary judgment.

1        1.      Plaintiff's Motion for Summary Judgment

2        In his motion for summary judgment, Plaintiff argues the undisputed evidence

3    demonstrates that after he was ordered to return to his housing unit, he walked away from

4    Defendants, and then Defendants used excessive force on him because he did not follow orders.

5        In opposition, Defendants argue that Plaintiff's has failed to establish that no genuine

6    dispute exists as to whether he used excessive force on him, and disputes of material fact

7    preclude summary judgment in favor of Plaintiff.

8        2.      Defendant Ochoa's Motion for Summary Judgment

9        Defendant Ochoa argues Plaintiff cannot create a genuine dispute of material fact as to

10   whether excessive force was used because the force was reasonable and Plaintiff did not suffer

11   significant injury from the incident.

12       In opposition, Plaintiff argues that Defendant Ochoa admitted to using excessive force

13   and several contradictions create a genuine issue of material fact for trial.  For the same reasons,

14   Plaintiff argues Defendant is not to qualified immunity.

15       3.      Analysis of Parties' Motions

16       When prison officials stand accused of using excessive force, the core judicial inquiry is

17   "... whether force was applied in a good-faith effort to maintain or restore discipline, or

18   maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7

19   (1992); Whitley v. Albers, 475 U.S. 312, 320-21 (1986).

20       The "malicious and sadistic" standard, as opposed to the "deliberate indifference"

21   standard applicable to most Eighth Amendment claims, is applied to excessive force claims

22   because prison officials generally do not have time to reflect on their actions in the face of risk of

23   injury to inmates or prison employees. See Whitley, 475 U.S. at 320-21.

24       In determining whether force was excessive, the court considers the following factors: (1)

25   the need for application of force; (2) the extent of injuries; (3) the relationship between the need

26   for force and the amount of force used; (4) the nature of the threat reasonably perceived by

27   prison officers; and (5) efforts made to temper the severity of a forceful response. See Hudson,

28   503 U.S. at 7. The absence of an emergency situation is probative of whether force was applied

8

maliciously or sadistically. See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc). The lack of injuries is also probative.  See Hudson, 503 U.S. at 7-9. Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials. See Whitley, 475 U.S. at 321-22.

Excessive force cases often turn on credibility determinations, and "[the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom." Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005) (en banc) (alteration in original) (quoting Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002)). Therefore, "summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." Id. (quoting Santos, 287 F.3d at 853). The Ninth Circuit has "held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury." Liston v. County of Riverside, 120 F.3d 965, 976 n.10 (9th Cir. 1997) (citations omitted).

Here, a substantial portion of the factual circumstances surrounding the July 18, 2018, use of force are disputed.  In consideration of the relevant factors under Hudson, the Court finds that both parties motions for summary judgment should be denied.

### a.    Need for Force

Plaintiff contends that Defendant Ochoa intentionally instigated the incident by choosing to counseling him at 7:00 in the morning on July 18, 2018, for his own "malicious agenda" because of Plaintiff's conduct toward the medical nurse.   (Pl. Opp'n at 4, 7, 17, 27.) Accordingly to Plaintiff, Defendant Ochoa approached him and both of them became angry. (ECF No. 1, Compl. at 4.)  Plaintiff declares that when Defendant Ochoa approached him, Ochoa stated, "Dude what the fuck is your problem.   Don't be coming to my clinic ever again grab[b]ing your dick & disrespectin[g] my nurses or I will take you down next time Petillo."[4]

---

[4] Defendant argues that Plaintiff cannot present this statement for the first time in his opposition.  The Court does not agree because this is not a new claim or theory, it is simply a statement that specifically relates to the July 18, 2028 incident and is not inconsistent with the factual allegations in the operative complaint.  In addition, as the statement does not present a new claim or theory it need not have been specifically presented in an inmate grievance for purposes of exhaustion.  See Griffin v. Arpaio, 557 F.3d 1117, 1121 (9th Cir. 2009) ("A grievance need not

1   (Pl. Opp'n at 17.)  Plaintiff contends that no use of force was necessary because he deescalated

2   the provocation by walking away and then held on to the gate to openly show that he was not a

3   threat.  (Pl. Opp'n at 14.)  In contrast, Defendant submits that physical force was necessary to

4   restore order.  (Ochoa Decl. ¶ 3.)  Thus, the parties dispute whether force was necessary.

5            **b.      Extent of Injuries**

6            Plaintiff contends that he was severely injured in that he suffered head injuries, abrasions,

7   bloody scratches, and swelling to the right wrist.  (Pl. Opp'n at 1.)  Further, "Plaintiff suffers

8   from mental anguish, depression, PTSD, [and] anxiety." (ECF No. 1, Compl. at 6.)

9            Defendant claims that Plaintiff's injuries are minimal.

10           The Court is not persuaded by Defendant's argument that the minimal nature of

11  Plaintiff's injuries is fatal to his claim. Of course, a lack of significant injury is relevant to an

12  Eighth Amendment claim. Wilkins v. Gaddy, 559 U.S. 34, 37 (2010). For example, the extent of

13  an injury can indicate the amount of force used as well as whether the use of force could have

14  been thought necessary under the circumstances. Id. at 1177. A lack of significant injury may

15  also limit the amount of damages a plaintiff can ultimately recover. Id. at 1180.  However, a

16  significant injury is not a threshold requirement for an Eighth Amendment claim. Rather, courts

17  must "decide excessive force claims based on the nature of the force rather than the extent of the

18  injury."  Id.   In this regard, " 'the use of physical force against a prisoner may constitute cruel

19  and unusual punishment [even] when the inmate does not suffer serious injury.' " Id. at 1176.   In

20  any event, viewing the facts in a light most Plaintiff, Plaintiff suffered head injuries, abrasions,

21  bloody scratches, and swelling to the right wrist as well as potential exacerbation of a pre-

22  existing eye injury as a result of Defendant Ochoa's conduct.

23           **c.      Relationship Between Need for Force and Amount of Force Used**

24           Plaintiff claims he did not need to be restrained after he walked away from the officers

25  and he was several yards away from officers when they reapproached him.  (Pl. Opp'n at 1, 5, 6,

26  10, 14, 18, 20, 21, 25, 26.)  According to Plaintiff, Defendant Ochoa slammed him to the ground

27  _____

28  include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim.")

causing Plaintiff to hit the left side of his head and was placed in tight handcuffs which caused swelling to his right wrist.   (Pl. Opp'n at 15.)   In the operative complaint, Plaintiff specifically alleges, he "felt a pinch on my wrist along handcuffs tighten up I yell 'ah fuck these cuffs to tight on me.'  Both officers ignored me more so Ochoa.  The handcuffs were not taking [sic] off until an unknown Sgt to me came in several long minutes later to strip search me."  (ECF No. 1, Compl. at 7.)  After Plaintiff was on the ground and restrained in handcuff, Defendant Ochoa told Plaintiff "he would be here waiting for me."  (ECF No. 1, Compl. at 5.)

Defendant claims the force used to Plaintiff to the ground in an effort to place him in handcuffs was proportional to the need.

The parties dispute whether force was necessary to physically restrain Plaintiff and place him in handcuffs.  Although Plaintiff admitted that he flexed his muscles, he explained at his deposition that he did so "in order to make a easy transition.  Not to resist, but to make a easy transition, to make it better to cuff up because they were fighting, snatching my arm.  They can break my arm or my wrist.  And so I was anticipating it.  And do that's why I flexed my arm, so they can grab it appropriate."  (Pl. Dep. at 51:8-14.)  In addition, Defendant Ochoa has presented no evidence that would justify handcuffing Plaintiff so tightly that he suffered pain, or to justify his refusal to loosen the handcuffs after Plaintiff complained of the pain.

### c.     Nature of Threat Reasonably Perceived by Officers

The parties do not dispute that Plaintiff told two other inmates to "post up" and "be ready."  (UF 13.)  However, Plaintiff declares that he asked the two inmates to post up and be ready so they could witness the "threats" and "intimidation tactics" used by Defendants.  (Pl. Opp'n at 22.)  Plaintiff declares that he never made a defense bladed stance with clinched fists toward either Ochoa or Jasso and never attempted to head butt Jasso.  (Pl. Opp'n at 10, 11, 13, 17, 18, 19, 22, 23.)  Rather, Plaintiff simply tried to walk away from the incident, but Defendant Ochoa followed him.  (Id. at 1, 5, 6, 10, 14, 18, 20, 21, 25, 26.)

Defendant Ochoa declares that he interpreted Plaintiff's statement to the other inmates as an implicit threat of violence as stated in his CDCR 837-C report because he feared they may act

1    on Plaintiff's threat, he ordered both inmates to "Get Down."   (Ochoa Decl. ¶ 3, Ex. 1, CDCR

2    837-C Report.)   The other two inmates complied and got down.   (Ochoa Decl. ¶ 3.)

3          Based on the conflicting interpretations, the determination of whether it was reasonably

4    perceived as a threat by Defendant Ochoa is a question of fact that must be resolved by a jury.

5          **d.       Efforts Made to Temper Severity of Forceful Response**

6          Plaintiff contends no efforts were made to temper the severity of the forceful response

7    because Defendant Ochoa "deliberately" pursued Plaintiff after he walked several yards away

8    from the incident in an attempt to diffuse the situation.   (Pl. Opp'n at 18, 20.)   Plaintiff further

9    declares that no efforts were made to temper the severity of a forceful response because there

10   was no announced radio call regarding Plaintiff's attempt to assault an officer.   (Pl. Opp'n at 21.)

11   "Corection officer Ochoa should have temper the severity of force by not re-approaching &

12   confronting inmate Petillo & allow Petillo regards to continue heading to his housing."   (Id.)

13         Defendant submits that he tried to temper the severity of the use of force.   Defendant

14   contends that had Plaintiff complied with Jasso's request to submit to handcuffs, no physical

15   force would have been necessary.

16         The parties dispute the specific factual circumstances regarding the necessity for Plaintiff

17   to submit to handcuffs which lead to the use of force.

18         In conclusion, on summary judgment, the Court may not weigh the parties' evidence or

19   determine the truth of the matters asserted by the parties; rather the court is required only to

20   determine whether there is a genuine issue of material fact appropriately resolved by

21   trial. See Summers v. A. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997).  Here,  the

22   Court cannot find, as a matter of law, that the undisputed facts establish the extent of Plaintiff's

23   injuries, the need for application of force, the amount of force actually used, the perceived threat,

24   or any efforts made to temper the severity of the response.   The determination of whether the use

25   of force by Defendant Ochoa was either made in a good-faith effort to maintain or restore

26   discipline, or that it was done maliciously and sadistically to cause harm is a question of fact to

27   be resolved by a jury.   See Whitley, 475 U.S. at 320-21.

28   ///

1          **e.      Qualified Immunity**

2          The defense of qualified immunity protects "government officials ... from liability for

3  civil damages insofar as their conduct does not violate clearly established statutory or

4  constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457

5  U.S. 800, 818 (1982). The rule of qualified immunity protects " 'all but the plainly incompetent

6  or those who knowingly violate the law;' " defendants can have a reasonable, but mistaken,

7  belief about the facts or about what the law requires in any given situation. Saucier v. Katz, 533

8  U.S. 194, 202 (2001) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). "Therefore,

9  regardless of whether the constitutional violation occurred, the [official] should prevail if the

10  right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably

11  believed that his particular conduct was lawful." Romero v. Kitsap County, 931 F.2d 624, 627

12  (9th Cir. 1991).

13          A right is clearly established if it were "sufficiently clear [at the time of the conduct at

14  issue] that every reasonable official would have understood that what he is doing violates that

15  right." Taylor v. Barkes, 572 U.S. 822, 825 (2015). "The right must be settled law, meaning that

16  it must be clearly established by controlling authority or a robust consensus of cases of

17  persuasive authority." Tuuamalemalo v. Greene, 946 F.3d 471, 477 (9th Cir. 2019). If the law

18  did not put the officer on notice that his conduct would be clearly unlawful, summary judgment

19  based on qualified immunity is appropriate. Saucier, 533 U.S. at 202.

20          A court considering a claim of qualified immunity must determine whether the plaintiff

21  has alleged the deprivation of an actual constitutional right and whether such right was clearly

22  established such that it would be clear to a reasonable officer that his conduct was unlawful in

23  the situation he confronted. See Pearson v. Callahan, 555 U.S. 223 (2009) (overruling the

24  sequence of the two-part test that required determination of a deprivation first and then whether

25  such right was clearly established, as required by Saucier, 533 U.S. at 194); Henry A. v. Willden,

26  678 F.3d 991, 1000 (9th Cir. 2012) (qualified immunity analysis requiring (1) determining the

27  contours of the clearly established right at the time of the challenged conduct and (2) examining

28  whether a reasonable official would have understood that the challenged conduct violated such

right). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case.  See Pearson, 555 U.S. at 236 (noting that while the Saucier sequence is often appropriate and beneficial, it is no longer mandatory). "[U]nder either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment," and must, as in other cases, view the evidence in the light most favorable to the non-movant. See Tolan v. Cotton, 572 U.S. 650, 656 (2014).

The qualified immunity inquiry is separate from the constitutional inquiry for a claim of deliberate indifference under the Eighth Amendment. Estate of Ford v. Caden, 301 F.3d 1043, 1053 (9th Cir. 2002) (extending Saucier to Eighth Amendment claims). A determination that there is a triable issue of fact as to whether defendants were deliberately indifferent does not necessarily preclude a finding of qualified immunity. Id.  For a qualified immunity analysis, the court need not determine whether the facts alleged show that defendants acted with deliberate indifference. See Osolinski v. Kane, 92 F.3d 934, 936 (9th Cir. 1996). Rather, the court need only review the relevant law to determine whether, in light of clearly established principles at the time of the incident, the officials could have reasonably believed their conduct was lawful.  Id. at 939. It is possible for a prison official to know all of the facts alleged by plaintiff and to understand that he cannot recklessly disregard a substantial risk of harm to a prisoner, and yet to mistakenly, though reasonably, perceive that the risk of harm is not too high; such an official is entitled to qualified immunity. Estate of Ford, 301 F.3d at 1049-50.

The plaintiff bears the burden of proving the existence of a "clearly established" right at the time of the allegedly impermissible conduct. Maraziti v. First Interstate Bank, 953 F.2d 520, 523 (9th Cir. 1992). The defendant bears the burden of establishing that his actions were reasonable, even if he violated the plaintiff's constitutional rights. White v. Pauly, 137 S. Ct. 548, 552 (2017).

Viewing the evidence in the light most favorable to Plaintiff, the Court finds Defendant is not entitled to qualified immunity.  First of all, Plaintiff has clearly alleged the deprivation of an actual constitutional right, i.e., an Eighth Amendment right to be protected from the use of

excessive force.  See Hudson, 503 U.S. at 6-7.  Secondly, Defendant has failed to establish that his conduct was reasonable.  Viewing the evidence in the light most favorable to Plaintiff, there was no need for any physical force as he walked several inches away from the incident and posed no threat.  Yet, Defendant is alleged to have violently forced Plaintiff to the ground, causing him to hit the left side of his head, and secured the handcuffs too tightly then refused to loosen them when he complained.  Because factual disputes exists as to the need and extent of physical force, it cannot be said, as a matter of law, that Defendant is entitled to qualified immunity.  See Hervey v. Estes, 65 F.3d 784, 791 (9th Cir. 1995) ("Unreasonable force claims are generally questions of fact for a jury" and, as a result, qualified immunity is not properly granted on such claims);  Sims v. Zavala, No. 16-cv06779-JST, 2018 WL 11016208, at *10 (N.D. Cal. Mar. 26, 2018) (denying qualified immunity because there was a question of material fact as to whether Plaintiff and other inmate had stopped fighting prior to deployment of force); Provencio v. Vazquez, No. 1:07-cv-00069-AWI-JLT, 2010 WL 2490937, at *5 n. 5 (E.D. Cal. June 16, 2010) ("[U]sing force after compliance has been achieved is constitutionally unsound.") (citing LaLonde, 204 F.3d at 961); see also Schwenk v. Hartford, 204 F.3d 1187, 1196 (9th Cir. 2000) ("[S]ummary judgment based on qualified immunity is improper if, under the plaintiff's version of the facts, and in light of the clearly established law, a reasonable officer could not have believed his conduct was lawful.") (citing Grossman v. City of Portland, 33 F.3d 1200, 1208 (9th Cir. 1994)).

**IV.**

**RECOMMENDATIONS**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.      Plaintiff's motion for summary judgment be denied; and

2.      Defendant Ochoa's motion for summary judgment be denied.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file

written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 23, 2023**

UNITED STATES MAGISTRATE JUDGE